# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

LARRY KLAYMAN,
7050 W. Palmetto Park Road
Boca Raton, FL 33433,

Plaintiff

v.

TODD LANMAN, M.D.,
450 N. Roxbury Drive, 3rd Floor
Beverly Hills, CA 90210,

Defendant.

Case No: _____

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1. **Medical Negligence**
2. **Lack of Informed Consent**
3. **Fraud / Intentional Misrepresentation**
4. **Fraudulent Concealment**
5. **Negligent Misrepresentation**

## COMPLAINT

Plaintiff Larry Klayman ("Plaintiff" or "Mr. Klayman"), by and through undersigned counsel, hereby brings this Complaint against Defendant Todd Lanman, M.D. ("Defendant" or "Dr. Lanman") and alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

2.      Plaintiff Mr. Klayman is a citizen of the State of Florida, domiciled in Boca Raton, Florida.

3.      Defendant Dr. Lanman is a citizen of the State of California, domiciled in and maintaining his medical practice in Beverly Hills, California.

COMPLAINT AND DEMAND FOR JURY TRIAL
1

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including all of the medical consultations, the surgery itself (performed at Cedars-Sinai Medical Center in Los Angeles, California), and the post-operative care at issue.

5.      All conditions precedent to the filing of this action that apply in federal court have been satisfied, as further set forth in Paragraphs 24–26 below.

## THE PARTIES

6.      Plaintiff Larry Klayman is an individual. Mr. Klayman is active in the professional golf industry, representing professional golfers on the LIV Golf and PGA Tours, and is also the principal of Golf4Health LTD, an entity through which he conducts a substantial portion of his golf-related professional activities.

7.      Defendant Todd Lanman, M.D. is an individual. Dr. Lanman is a licensed physician and holds himself out to the public as a board-certified neurosurgeon specializing in artificial disc replacement. At all times relevant to this Complaint, Dr. Lanman maintained his medical practice at 450 N. Roxbury Drive, 3rd Floor, Beverly Hills, California 90210, and performed the surgery at issue at Cedars-Sinai Medical Center in Los Angeles, California.

## FACTUAL ALLEGATIONS

**A.      Mr. Klayman's Pre-Existing Condition and Consultation with Dr. Lanman**

8.      In 2024, Mr. Klayman, then over sixty (60) years of age, was experiencing back pain and discomfort attributable to herniated discs at the L4-L5 and L5-S1 levels of his lumbar spine. Mr. Klayman also had a pre-existing, diagnosed scoliosis—a lateral curvature of the spine—that was known, or that should have been known through the exercise of ordinary diagnostic care, to any treating spine surgeon.

9.      Because Mr. Klayman's professional activities depend in substantial part on his ability to play golf competently alongside his professional-golfer clients, Mr. Klayman sought consultation with a spine surgeon to (a) address his pain and (b) preserve or improve his rotational spinal mobility.

COMPLAINT AND DEMAND FOR JURY TRIAL
2

10. In or about the fall of 2024, Mr. Klayman met with Dr. Lanman at Dr. Lanman's Beverly Hills offices to discuss surgical options. Additional diagnostic and pre-operative meetings between Mr. Klayman and Dr. Lanman followed at those same offices during the fall of 2024.

11. During those consultations, Dr. Lanman had access to Mr. Klayman's diagnostic imaging and medical history, including imaging and information reflecting Mr. Klayman's scoliosis and his age.

**B.    Dr. Lanman's Representations and Non-Disclosures**

12. During the consultations described above—including a specific consultation at Dr. Lanman's Beverly Hills offices in the fall of 2024—Dr. Lanman personally recommended that Mr. Klayman undergo a multi-level artificial disc replacement at L4-L5 and L5-S1 using an anterior (abdominal) surgical approach (the "Surgery").

13. In recommending the Surgery, Dr. Lanman affirmatively represented to Mr. Klayman that, among other things: (a) the Surgery had a "93% success rate"; (b) the Surgery would relieve Mr. Klayman's back pain and discomfort; and (c) the Surgery would restore or improve Mr. Klayman's rotational spinal mobility such that he could continue to play golf at a competent level with his professional-golfer clients and generally.

14. Dr. Lanman made the representations set forth in the preceding paragraph orally, in person, to Mr. Klayman, at Dr. Lanman's offices in Beverly Hills, California, during one or more consultations in the fall of 2024.

15. Dr. Lanman failed to disclose, and affirmatively concealed, material facts known to him as a spine surgeon holding himself out as an expert in artificial disc replacement, including: (a) that anterior-approach multi-level artificial disc replacement was contraindicated, or otherwise fell below the standard of care, for a patient of Mr. Klayman's age due to a materially increased risk of catastrophic vascular injury, including potentially fatal internal bleeding from injury to the great vessels; (b) that the procedure was contraindicated, or otherwise fell below the standard of care, for a patient with pre-existing scoliosis because asymmetric placement of the discs in a laterally-curved spine tends to increase, rather than decrease, the curvature and destabilize the

spine; (c) that, as applied to Mr. Klayman specifically—a patient over sixty (60) with documented scoliosis—the "93% success rate" representation was materially false and misleading; and (d) the true, substantially lower probability of a successful outcome for a patient with Mr. Klayman's age and spinal profile.

16.    Dr. Lanman knew, or recklessly disregarded the fact, that the facts set forth in the preceding paragraph were material to Mr. Klayman's decision whether to undergo the Surgery, and that Mr. Klayman would not have consented to the Surgery had those facts been disclosed.

17.    Dr. Lanman had a direct pecuniary interest in Mr. Klayman proceeding with the Surgery, and on information and belief stood to receive, and did receive, substantial compensation from the performance of the Surgery.

**C.    The Surgery and Its Aftermath**

18.    In reasonable reliance on Dr. Lanman's representations and in the reasonable belief that Dr. Lanman had disclosed all material risks and contraindications, Mr. Klayman consented to and underwent the Surgery.

19.    On or about December 4, 2024, Dr. Lanman performed the Surgery on Mr. Klayman at Cedars-Sinai Medical Center in Los Angeles, California, using an anterior surgical approach through the abdomen, together with an access surgeon.

20.    Contrary to Dr. Lanman's representations, the Surgery did not relieve Mr. Klayman's pain or improve his rotational mobility. To the contrary, Mr. Klayman's condition materially and severely worsened as a direct and proximate result of the Surgery. Among other things: (a) the artificial discs were placed asymmetrically; (b) Mr. Klayman's pre-existing scoliotic curvature more than doubled; (c) his spinal stability was destroyed, and his spine now visibly protrudes from his back with resulting pain and severe discomfort, a deformity readily apparent to ordinary observers; (d) he now suffers severe pain on any attempt at spinal rotation and is unable to walk short-to-medium distances without severe pain and discomfort; (e) he is no longer able to play golf at all; and (f) he is left with a prominent, permanent, and disfiguring scar across his abdomen from the anterior approach—a scar of such size and location that the surrounding flesh

is bunched and visibly distorted, and the scar and resulting disfigurement are visible through ordinary clothing, including casual shirts. Each of these injuries was avoidable. Had Mr. Klayman undergone an appropriate alternative procedure suited to his age and pre-existing scoliosis, such as a spinal fusion tailored to his specific condition, the catastrophic worsening of his spinal curvature, the destruction of his spinal stability and spine now protruding through his back, and the prominent abdominal scar resulting from the anterior approach would not have occurred or would have been substantially avoided.

21.    Following the Surgery, Dr. Lanman's post-operative response was grossly inadequate. Despite Mr. Klayman's reports of severe and worsening symptoms, Dr. Lanman continued to characterize the Surgery as a success and referred Mr. Klayman to a pain-management provider who was effectively unreachable, rather than providing appropriate follow-up, diagnostic re-evaluation, or corrective intervention.

**D.    Independent Confirmation of Malpractice**

22.    Following the Surgery, Mr. Klayman consulted with five (5) independent, prominent spine surgeons in multiple cities during the last six months of 2025. Each of those surgeons, independently and without knowledge of the others' opinions, concluded that: (a) the Surgery was contraindicated, or otherwise fell below the standard of care, given Mr. Klayman's pre-existing scoliosis and age; (b) he or she would not have performed the Surgery on Mr. Klayman under those circumstances; (c) Dr. Lanman failed to adequately disclose the material risks of the anterior approach, including catastrophic vascular injury; and (d) the asymmetric placement of the discs by Dr. Lanman caused, rather than corrected, the dramatic worsening of Mr. Klayman's spinal curvature and overall condition.

23.    Mr. Klayman has identified a qualified neurosurgeon prepared to perform corrective surgery at a cost of approximately $25,000.00, exclusive of reasonable travel and lodging expenses. Dr. Lanman has previously refunded $11,500.00 to Mr. Klayman, which partially offset certain consultation expenses but did not begin to address the cost of corrective care or the full scope of damages sustained.

COMPLAINT AND DEMAND FOR JURY TRIAL

5

**E.    Compliance with CCP § 364 and Pre-Suit Demands**

24.    On March 19, 2026, Plaintiff, through undersigned counsel, served on Defendant a formal Notice of Intent to Commence Action pursuant to California Code of Civil Procedure § 364, setting forth the legal basis of the claim, the type of loss sustained, and the nature of the injuries suffered. The notice was served via email to Defendant's office addresses (surgery@spine.md and frontdesk@spine.md) and by certified mail, return receipt requested.

25.    On April 8, 2026 and April 24, 2026, Plaintiff, through undersigned counsel, sent follow-up communications to Defendant. Defendant has, to date, failed to respond substantively to any of the communications.

26.    To the extent California Code of Civil Procedure § 364's 90-day waiting period is alleged to apply to this federal-court action, Plaintiff respectfully submits that the requirement is a state pleading prerequisite that conflicts with Federal Rule of Civil Procedure 3 and does not apply in federal court. *See Martin v. Pierce County*, 34 F.4th 1125, 1131–33 (9th Cir. 2022) (state medical-malpractice declaration requirement displaced by Rule 3 because it "add[s] additional, procedural steps for commencing a suit beyond those that Rule 3 contemplates"); *Berk v. Choy*, 146 S. Ct. ___ (Jan. 20, 2026) (state medical-malpractice pleading prerequisites displaced by Federal Rules of Civil Procedure). In the alternative, and as recognized by California courts, any alleged noncompliance with § 364 is nonjurisdictional, does not invalidate these proceedings, and does not affect the Court's jurisdiction to render judgment. *See* Cal. Code Civ. Proc. § 365; *Woods v. Young*, 53 Cal. 3d 315, 324 (1991); *Silver v. McNamee*, 69 Cal. App. 4th 269, 279 n.14 (1999); *Toigo v. Hayashida*, 103 Cal. App. 3d 267, 269 (1980).

## CAUSES OF ACTION

### COUNT ONE

*(Medical Negligence – Professional Negligence Under California Law)*

27.    Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

28.    At all times relevant, Defendant Dr. Lanman was a licensed physician holding himself out as an expert in spine surgery and artificial disc replacement, and undertook the medical care and treatment of Mr. Klayman. A physician-patient relationship existed between Dr. Lanman and Mr. Klayman giving rise to a duty of care.

29.    Dr. Lanman owed Mr. Klayman the duty to possess and exercise that degree of skill, knowledge, and care ordinarily possessed and exercised by reputable spine surgeons under the same or similar circumstances.

30.    Dr. Lanman breached the applicable standard of care by, among other things: (a) recommending and performing multi-level anterior artificial disc replacement on a patient over sixty (60) years of age with known scoliosis, when the procedure was contraindicated, or otherwise fell below the standard of care, under the circumstances presented; (b) placing the artificial discs asymmetrically in a manner that more than doubled Mr. Klayman's scoliotic curvature and destroyed his spinal stability; (c) failing to diagnose, evaluate, and timely respond to post-operative signs of a failed and deteriorating surgical outcome; and (d) failing to provide appropriate post-operative follow-up, diagnostic re-evaluation, and corrective intervention.

31.    As a direct and proximate result of Dr. Lanman's breaches of the standard of care, Mr. Klayman has suffered severe and permanent physical injury, disfigurement, loss of function, pain and suffering, emotional distress, loss of enjoyment of life, past and future medical expenses (including the cost of corrective surgery), and economic losses, including losses associated with his professional activities and Golf4Health LTD.

## COUNT TWO

### (Lack of Informed Consent)

32.    Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

33.    Under California law, a physician has an affirmative duty to disclose to a patient, before obtaining consent to a surgical procedure, all material risks of the procedure, the existence

of any known contraindications, and reasonable alternatives, such that a reasonable person in the patient's position could make an informed decision whether to proceed.

34.    Dr. Lanman breached that duty by failing to disclose, among other things: (a) that the anterior-approach multi-level artificial disc replacement was contraindicated, or otherwise fell below the standard of care, in a patient over sixty (60) years of age due to the materially increased risk of catastrophic vascular injury; (b) that the procedure was contraindicated, or otherwise fell below the standard of care, in a patient with pre-existing scoliosis because the discs would be placed asymmetrically and would increase, rather than decrease, the spinal curvature; (c) the true, substantially lower probability of a successful outcome for a patient with Mr. Klayman's age and spinal profile; and (d) the availability of conservative or alternative treatments better suited to Mr. Klayman's condition.

35.    A reasonable person in Mr. Klayman's position, fully informed of the foregoing risks, contraindications, and alternatives, would not have consented to the Surgery.

36.    As a direct and proximate result of Dr. Lanman's failure to obtain informed consent, Mr. Klayman underwent the Surgery and suffered the injuries and damages set forth above. Mr. Klayman has suffered severe and permanent physical injury, disfigurement, loss of function, pain and suffering, emotional distress, loss of enjoyment of life, past and future medical expenses (including the cost of corrective surgery), and economic losses, including losses associated with his professional activities and Golf4Health LTD.

## COUNT THREE

### *(Fraud / Intentional Misrepresentation)*

37.    Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

38.    During one or more consultations at Dr. Lanman's Beverly Hills offices in the fall of 2024, Dr. Lanman personally and orally represented to Mr. Klayman that the Surgery—multi-level anterior artificial disc replacement at L4-L5 and L5-S1—had a "93% success rate" and would relieve his pain and restore or improve his rotational spinal mobility.

39.     These representations were false. At the time Dr. Lanman made them, the Surgery was contraindicated, or otherwise fell below the standard of care, for a patient with Mr. Klayman's age and pre-existing scoliosis, and the probability of a successful outcome for a patient with that profile was materially lower than 93% and, in the opinion of multiple independent spine surgeons, unacceptably low.

40.     Dr. Lanman knew that these representations were false, or made them with reckless disregard for their truth, based on his specialized training, experience, and access to Mr. Klayman's diagnostic imaging and medical history reflecting his age and scoliosis.

41.     Dr. Lanman made these representations with the intent to induce Mr. Klayman to consent to and undergo the Surgery and, in turn, to generate substantial fees and professional benefit for himself.

42.     Mr. Klayman was unaware of the falsity of the representations and reasonably and justifiably relied on them in consenting to and undergoing the Surgery. A reasonable patient in Mr. Klayman's position, relying on his treating spine surgeon's affirmative representations regarding success rates and outcomes, would have been justified in doing the same.

43.     As a direct and proximate result of Dr. Lanman's intentional misrepresentations, Mr. Klayman underwent the Surgery and sustained the injuries and damages set forth above. Mr. Klayman has suffered severe and permanent physical injury, disfigurement, loss of function, pain and suffering, emotional distress, loss of enjoyment of life, past and future medical expenses (including the cost of corrective surgery), and economic losses, including losses associated with his professional activities and Golf4Health LTD.

44.     Dr. Lanman's conduct was malicious, oppressive, and fraudulent within the meaning of California Civil Code § 3294, entitling Mr. Klayman to an award of punitive and exemplary damages.

## COUNT FOUR

### (Fraudulent Concealment)

45.     Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

46.     As Mr. Klayman's treating spine surgeon, Dr. Lanman owed Mr. Klayman a duty to disclose all material facts bearing on the decision whether to undergo the Surgery, arising from the physician-patient relationship and from his superior knowledge of facts not reasonably discoverable by Mr. Klayman.

47.     Dr. Lanman intentionally concealed or suppressed material facts that he had a duty to disclose, including: (a) that anterior-approach artificial disc replacement for a patient over sixty (60) years of age was contraindicated, or otherwise fell below the standard of care, under the circumstances presented; (b) that artificial disc replacement for a patient with pre-existing scoliosis was contraindicated, or otherwise fell below the standard of care, because of the materially increased risk of asymmetric placement and worsening deformity; (c) the risk of asymmetric placement and consequent increase in scoliotic curvature; (d) the true probability of a successful outcome for a patient with Mr. Klayman's age and spinal profile; and (e) the availability of more appropriate conservative or alternative treatments.

48.     Dr. Lanman intended by his concealment and suppression of these material facts to induce Mr. Klayman to consent to and undergo the Surgery.

49.     Mr. Klayman was unaware of the concealed facts and would not have consented to the Surgery had he known them.

50.     As a direct and proximate result of Dr. Lanman's fraudulent concealment, Mr. Klayman sustained the injuries and damages set forth above, and is entitled to punitive and exemplary damages pursuant to California Civil Code § 3294. Mr. Klayman has suffered severe and permanent physical injury, disfigurement, loss of function, pain and suffering, emotional distress, loss of enjoyment of life, past and future medical expenses (including the cost of

corrective surgery), and economic losses, including losses associated with his professional activities and Golf4Health LTD.

## COUNT FIVE

### *(Negligent Misrepresentation)*

51.     Plaintiff re-alleges and incorporates by reference each of the preceding paragraphs as though fully set forth herein.

52.     Pleaded in the alternative to Counts Three and Four, Dr. Lanman represented to Mr. Klayman during the fall 2024 consultations that the Surgery had a "93% success rate" and would achieve the pain relief and rotational-mobility outcomes described above.

53.     These representations were not true. Dr. Lanman positively asserted these facts as true without any reasonable ground for believing them to be true as applied to a patient with Mr. Klayman's age and pre-existing scoliosis, in a manner not warranted by the information he possessed.

54.     Dr. Lanman made these representations with the intent that Mr. Klayman rely on them in deciding whether to undergo the Surgery. Mr. Klayman justifiably relied on them in consenting to and undergoing the Surgery and, as a direct and proximate result, sustained the injuries and damages set forth above. Mr. Klayman has suffered severe and permanent physical injury, disfigurement, loss of function, pain and suffering, emotional distress, loss of enjoyment of life, past and future medical expenses (including the cost of corrective surgery), and economic losses, including losses associated with his professional activities and Golf4Health LTD.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Larry Klayman respectfully prays for judgment against Defendant Todd Lanman, M.D. as follows:

a.  For compensatory damages, including past and future medical expenses (including the cost of corrective surgery and associated travel and lodging), economic losses (including losses related to Mr. Klayman's professional activities and Golf4Health LTD), loss of earning capacity, pain and suffering, emotional distress, loss of enjoyment of life, and disfigurement, in an amount in excess of $20,000,000.00, or in such amount as shall be determined by the jury at trial;

b.  For punitive and exemplary damages pursuant to California Civil Code § 3294 on Counts Three and Four, in an amount to be determined by the jury at trial sufficient to punish Defendant and deter similar conduct;

c.  For pre-judgment and post-judgment interest as permitted by law;

d.  For costs of suit incurred herein; and

e.  For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims and issues so triable pursuant to Federal Rule of Civil Procedure 38(b).

Dated: April 28, 2026

Respectfully Submitted,

*John M. Pierce*

John M. Pierce (CA Bar No. 250443)
JOHN PIERCE LAW P.C.
21550 Oxnard Street, 3rd Floor
Woodland Hills, CA  91367
jpierce@johnpiercelaw.com
(321) 292-2366

*Counsel for Plaintiff Larry Klayman*